. **Ella Kelly v. G. W. Killian.**

1. CORPORATION—*what does not affect status as stockholder.* The mere fact that certificates never issued, does not affect the status of a subscriber as a stockholder.

2. CORPORATION—*who deemed stockholder.* A person who has never legally transferred his stock is deemed a stockholder for the purpose of the enforcement of statutory liability.

3. STOCK LIABILITY—*how may be enforced.* A creditor of a corporation may recover of a stockholder thereof who has not paid in full for corporation stock subscribed for by him.

Kelly v. Killian.

Assumpsit. Error to the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the February term, 1906. Reversed and remanded. Opinion filed September 14, 1906. Rehearing denied February 26, 1907.

L. H. HITE and CHARLES NEUSTADT, for plaintiff in error.

F. C. SMITH and M. MILLARD, for defendant in error.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit by plaintiff in error, Ella Kelly, against G. W. Killian, defendant in error, to compel him as the owner of unpaid stock of the Mississippi Valley Railway Company, to pay a note given by that company to M. M. Kelly, and assigned to her for a valuable consideration.

It appears from the proofs that in October, 1893, Killian, with four associates, organized the Mississippi Valley Railway Company, under the laws of this State, with a capital stock of $3,000,000 divided into 30,000 shares of the par value of $100 each. Killian was named as one of the five persons constituting the first board of directors and was also made secretary. The stock was evenly divided among the five incorporators, each receiving 6,000 shares. No certificates of stock were issued to the stockholders nor were any regular stock books showing the owners of stock or transfers of the same kept. On August 30, 1895, by-laws were adopted by the board of directors, providing among other things that "the capital stock of this corporation which has been subscribed for, and not actually issued, may be transferred by an instrument in writing, signed by the person or persons entitled to the same when issued, and all such transfers of the capital stock and any interest therein, shall be valid when the same is exhibited to the secretary of the company, and a record thereof is made in the transfer book kept by the secretary. All such transfers shall be numbered in such transfer book of the secretary in the order in which they are made and no such transfers shall be valid unless the same are entered in the transfer book kept by the secretary."

In 1897, M. M. Kelly was employed by the company as superintendent of construction and the company became indebted to him during that year for his services, and for supplies and money furnished in the sum of $4,000. Afterwards on August 15, 1902, the company to pay this debt, executed its note to Kelly for said amount due ten days after date, with interest from date at the rate of six per cent per annum. On November 2, 1903, M. M. Kelly, for value received, indorsed and delivered said note to Ella Kelly, the plaintiff in error. Killian testified himself and proved by other witnesses that in June, 1895, he sold his stock in the corporation to "Captain" Ware for $150, and that this stock in some way not explained was held in the name of Ware's bookkeeper, Charles M. Whittelsey; that at the time Killian sold his stock, the company owed nothing and there was nobody working on the road; that he had paid in from time to time about $180. On October 7, 1895, T. N. Chase, the president of the association, by a written transfer from the other stockholders acquired all the capital stock of the company and as Killian had made no actual transfer of his stock to Whittelsey, he and Whittelsey both signed the assignment. In 1903 *quo warranto* proceedings were instituted against the railway company by the people of the State of Illinois, on the relation of the attorney-general and on September 22 of that year a judgment of ouster was entered against the company by the City Court of East St. Louis, the court finding among other things, that the defendant corporation had no assets of any kind, either real or personal, and had not acquired right of way for any portion of its proposed railroad. The corporation had in fact been insolvent for several years, if indeed it was ever solvent.

In the court below a jury was waived and there was a trial by the court, a finding in favor of defendant and a judgment against plaintiff for costs.

The defenses made by Killian to the suit and relied on here to sustain the action of the court below are, (1) that he is not liable for the indebtedness because he had ceased to be a stockholder of the company before the indebtedness was

Kelly v. Killian.

incurred; (2) that the right of action accrued to Kelly, if at all, at the time the original debt was incurred in 1897, and suit not having been brought within five years thereafter, the debt is barred by the Statute of Limitations; (3) that the suit cannot be maintained by plaintiff in her name for the reason that the claim of M. M. Kelly was an open account and not assignable so as to transfer the legal right to bring suit to plaintiff; and (4) if this is to be regarded as a suit upon the note, no recovery can be had because the action must be against the party who made the note.

While Killian claims to have sold his stock to Captain Ware in the spring of 1895, yet he does not appear to have made any written assignment or transfer of it until October 7, 1895, when he assigned the stock to Chase. In the meantime the by-law had been passed which provided that stock not actually issued, as was Killian's, could only be transferred by an instrument in writing, signed by the party entitled to the same and recorded in a transfer book kept by the secretary, and that no transfer should be valid unless so entered in such book. But even if the sale and attempted transfer could be considered as made before the passage of the by-law, yet that fact could not make any material difference in the situation. Section 7 of chapter 114, Rev. Stat., relating to the incorporation of railroad companies, which closely follows section 9, article 11 of the Constitution, provides that "Every such corporation organized under the provisions of this act shall have and maintain a public office or place in this State for the transaction of its business, where transfer of all its stock shall be made, and in which shall be kept for public inspection, books, wherein shall be recorded the amount of capital stock subscribed and by whom, the names of the owners of its stock, the number of shares held by each person, and the number by which each of said shares is respectively designated, and the amounts owned by them respectively, the amount of stock paid in, and by whom, the transfers of said stock, the amount of its assets and liabilities, and the names and places of residence of all its officers."

Section 14 of the same chapter of the statute provides, "The stock of such corporation shall be deemed personal estate and shall be transferable in the manner prescribed by the by-laws of such corporations." The company kept no books for recording the transfer of stock and consequently no record of the same was or could be made. The stock subscribed for by Killian was therefore never legally transferred by him, and so far as appellant is concerned, Killian must still be considered as the owner of the same and a stockholder. Cook on Stocks & Stockholders and Corporation Law (3rd Ed.), p. 341.

It is immaterial that no certificate of shares of stock has been issued to Killian or that the corporation has issued no certificates to any of its shareholders. Id., secs. p. 353.

As to the Statute of Limitations, it appears that the company became indebted to M. M. Kelly in the months of October, November and December, 1897, in the sum of $4,000 and that within five years thereafter, to-wit, on August 15, 1902, it gave him its promissory note for that amount due ten days after date in satisfaction of the account. This it had a right to do and the note so given was of course not barred by the statute when this suit was commenced.

The note is the usual form and could be assigned by indorsement as other promissory notes. It was so assigned for a valuable consideration by M. M. Kelly to plaintiff in error, who thereby acquired the right to bring suit upon the note in her own name. It remains to be considered whether a recovery can be had against defendant in error upon a note given by the Mississippi Valley Railway Company, to which note, defendant in error was not directly a party. It is true as claimed by counsel for defendant in error, that as a general rule an action for a breach of contract must be brought against the party who made the contract. Corbett v. Schumacker, 83 Ill., 403. This suit however is based not only on the promissory note but also upon the statute which provides that "Each stockholder of any corporation formed under the provisions of this act, shall be held individually liable to the creditors of such corporation to an amount not

exceeding the amount unpaid on the stock held by him, for any and all debts and liabilities of such corporation, until the whole amount of the capital stock of such corporation so held by him shall have been paid." Chapter 114, section 17, Rev. Stat. (Hurd, 1905).

To enable plaintiff in error to recover it was necessary for her to first establish that the corporation was indebted to her, which was done by showing that the note was a debt and liability of the corporation. It was next necessary for her to establish that Killian was a stockholder of the corporation, as to her, which was also done in the manner above indicated. Finally it was incumbent upon her to show that this stock had not been paid for, proof of which fact was duly made.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*